UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61089-STRAUSS

ALICIA ERMINY,

     Plaintiff,
v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment/Initial Brief ("Plaintiff's Motion") [DE 22] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 26]. I have reviewed both motions, Plaintiff's Reply Brief [DE 28], the administrative record [DE 11], and all other filings in this case. For the reasons discussed herein, Plaintiff's Motion [DE 22] will be **DENIED** and Defendant's Motion [DE 26] will be **GRANTED**.

### I.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits ("DIB") on August 28, 2019, alleging a disability onset date of December 18, 2018 ("Alleged Onset Date"). Tr. 15, 150, 390-95. She also applied for supplemental security income ("SSI") on September 19, 2019. Tr. 15, 151, 398-403. Plaintiff, who was born in 1968, was 50 years old on the Alleged Onset Date. Her DIB and SSI claims were denied initially and upon reconsideration. Tr. 15, 150-51, 190-91. Thereafter, Plaintiff appeared with counsel at two telephonic hearings before an Administrative Law Judge ("ALJ"), first on October 20, 2020, and again on October 7, 2021. Tr. 36-117. At the first hearing,

Plaintiff, a medical expert ("ME"), and a vocational expert ("VE") provided testimony. Tr. 36-80. At the second hearing, the same ME, an additional ME, and a different VE provided testimony. Tr. 81-117. On November 8, 2021, the ALJ issued his decision, finding that Plaintiff was not disabled under the Social Security Act (from the Alleged Onset Date through the date of the ALJ's decision). Tr. 15-28. On May 13, 2022, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on June 8, 2022, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's

factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III. DISCUSSION

#### A. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. §§ 404.1569, 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted); *see also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

### B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled between the Alleged Onset Date and the date of the ALJ's decision. *See* Tr. 15-28. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 15-17. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 17.

At step two, the ALJ found that Plaintiff had the severe impairment of status post traumatic brain injury, causing diplopia and migraine headaches. Tr. 18. The ALJ also discussed nonsevere impairments at step two, including Plaintiff's mental impairments, which the ALJ found were nonsevere. Tr. 18-21. As to Plaintiff's mental impairments, the ALJ found (at step two) that Plaintiff's "medically determinable mental impairments of mild neurocognitive disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." Tr. 18. The ALJ noted that he considered the "paragraph B" criteria – the four broad areas of mental functioning – in making the foregoing finding. Tr. 18. He assessed a "mild" limitation in all four areas (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself). Tr. 18-19. Next, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21.

The ALJ next assessed Plaintiff's RFC, determining based on his consideration of the entire record that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows. [Plaintiff] can lift and or carry twenty pounds occasionally, ten pounds

> frequently. [Plaintiff] can stand and walk for a total of six hours in an eight-hour workday. [Plaintiff] can sit for a total of six hours in an eight-hour workday. [Plaintiff] should never climb ladders, ropes, or scaffolds, but she can frequently climb up stairs, stoop, kneel, crouch, and crawl, occasionally walk downstairs with a handrail, and occasionally balance. [Plaintiff] should not walk on uneven surface. [Plaintiff] should avoid all exposure to unprotected heights, and she should not be exposed to loud machinery.

Tr. 21-22. After assessing Plaintiff's RFC, the ALJ found that – based on Plaintiff's RFC – Plaintiff is capable of performing her past relevant work as an artist. Tr. 26.

Although – by finding that Plaintiff could perform her past relevant work – the ALJ effectively found that Plaintiff was not disabled at step four, the ALJ made alternative step five findings. Tr. 27-28. Specifically, relying on the VE's testimony, and taking into account Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work existing in significant numbers in the national economy – in other words, the ALJ found that Plaintiff is capable of performing such work in addition to Plaintiff's past relevant work. Tr. 27-28. Therefore, the ALJ concluded that Plaintiff was not disabled at any time between the Alleged Onset Date and the date of the ALJ's decision. Tr. 28.

    C. **ANALYSIS**

In her motion, Plaintiff raises two arguments. First, Plaintiff contends that the ALJ erred by failing to include any mental limitations in Plaintiff's RFC. Second, Plaintiff contends that the ALJ erred by failing to adequately account for Plaintiff's headaches in formulating Plaintiff's RFC. As discussed herein, both arguments fail.

    1. **Mental Limitations**

Plaintiff has failed to establish error with respect to the ALJ's decision to omit mental limitations from Plaintiff's RFC. In evaluating Plaintiff's mental impairments, the ALJ evaluated

the paragraph B criteria in connection with steps two and three of the sequential evaluation, and he also conducted a more detailed assessment of the relevant evidence regarding Plaintiff's mental impairments. *See* Tr. 20 (recognizing that the mental RFC assessment requires a more detailed assessment than the paragraph B criteria evaluation at steps two and three); *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1325 (11th Cir. 2021) ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Such evidence included relevant opinion evidence and prior administrative medical findings, other medical evidence, Plaintiff's testimony, and other evidence such as evidence regarding Plaintiff's activities of daily living. *See* Tr. 18-22, 24.

As indicated above, an ALJ must consider the medical severity a claimant's impairments at step two of the sequential evaluation. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019). But step two only involves a "threshold" inquiry. *Id.* at 1265. It simply "'acts as a filter' to weed out claims where there are no severe impairments at all." *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) (quoting and citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Here, because the ALJ found severe impairments at step two – albeit no severe mental impairments – he did not "weed out" Plaintiff's claims at step two. Rather, he denied her claims at step four (with an alternative finding at step five).

Regarding Plaintiff's mental impairments, the ALJ found at step two that Plaintiff's "impairments of mild neurocognitive disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." Tr. 18. Again, in making this finding, the ALJ considered the four broad functional areas (the paragraph B criteria). *See Buckwalter*, 5

F.4th at 1324 (citing *Schink*, 935 F.3d at 1269) ("In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria." (citing *Schink*, 935 F.3d at 1269)). "The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Id.* at 1324-25 (citing 20 C.F.R. § 404.1520a(c)(3)). "The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning." *Id.* at 1325 (citing 20 C.F.R. § 404.1520a(c)(4)). Here, as noted above, the ALJ assigned a "mild" rating in all four areas. Because the ALJ did not find more than a mild limitation in any area, and because he found the evidence did "not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities," he concluded her mental impairments were not severe. Tr. 20.

Notably, "persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while" assessing the paragraph B criteria. *E.g., Alvarado v. Kijakazi*, No. 22-CV-60416, 2023 WL 2548424, at *13 (S.D. Fla. Mar. 17, 2023) (quoting *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022)).[1] Now, that does not relieve ALJs of the obligation to consider all relevant evidence, all impairments (both severe and non-severe), and a claimant's condition as a whole when assessing a claimant's RFC. *See Buckwalter*, 5 F.4th at 1320; *Schink*, 935 F.3d at 1268-69. But here, the ALJ's decision shows that he fulfilled that obligation.

---

[1] The situation may be different when moderate limitations are involved. *See Buckwalter*, 5 F.4th at 1325 ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's *moderate* limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." (citing *Winschel*, 631 F.3d at 1180-81) (emphasis added)).

For instance, the ALJ expressly discussed the relevant medical opinions and prior administrative medical findings in conjunction with evaluating Plaintiff's mental impairments, and he evaluated such evidence in accordance with the applicable regulations. *See* Tr. 19-20. Because Plaintiff's claims for benefits were filed after March 27, 2017, the ALJ was required to consider the medical opinion evidence and prior administrative medical findings in Plaintiff's case in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. Under these regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the requirement to assign weight to medical opinions has been omitted from the revised regulation). Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. §§ 404.1527, 416.927 – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). In doing so, the ALJ must explain how he considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he considered the other three factors. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). Under the supportability factor, "[t]he more relevant the objective medical

10

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, in addition to the prior administrative medical findings at the initial and reconsideration levels (Tr. 118-49, 152-89), medical opinions regarding Plaintiff's mental limitations were provided by Aaron Williams, Psy.D. (Tr. 1263-70) and Colette Valette, Ph.D. (Tr. 105-11). The state agency psychological consultants assessed a moderate limitation in the area of concentrating, persisting, or maintain pace, and they assessed a mild limitation in the other three areas. Tr. 125, 141, 161, 180. Dr. Williams assessed no limitation in interacting with others, a mild-to-moderate limitation in understanding, remembering, or applying information, and moderate limitations in concentrating, persisting, or maintaining pace and in adapting or managing oneself. Tr. 1267. Finally, Dr. Valette, who appeared at the October 2021 hearing, testified that Plaintiff does not have severe mental health issues, and Dr. Valette opined that Plaintiff has a mild limitation in all four functional areas. Tr. 106-08.

Plaintiff contends that the ALJ erred by assessing mild limitations in all four functional areas when, according to Plaintiff, all of the opinion evidence existing prior to Dr. Valette's testimony revealed a higher degree of impairment, at least in the area of concentrating, persisting, or maintaining pace. Plaintiff points out that unlike Dr. Valette, both Dr. Williams and the state agency psychological consultants assessed moderate limitations in the area of concentrating,

persisting, or maintaining pace. But what Plaintiff fails to do is to show that (1) the ALJ did not evaluate the opinion evidence in accordance with the applicable regulations, or (2) that the ALJ's evaluation of the opinion evidence is not supported by substantial evidence. Significantly, the ALJ followed the regulations and pointed to evidence that reasonably supports his evaluation.

First, the ALJ summarized the prior administrative medical findings, finding them to be "somewhat persuasive." Tr. 19. He explained:

> As for supportability, the State agency medical consultants are experienced in evaluating Social Security disability claims and they cited objective medical and other evidence at that time in support of their opinions, but they did not have the opportunity to review updated medical evidence. As for consistency, their opinions are somewhat consistent with the record, which shows a diagnosis for mild neurocognitive disorder and generalized anxiety disorder, but the claimant is capable of a wide array of activities of daily living (Exhibit 7F, p. 1; Exhibit 9F, p. 3). Further, treatment records routinely indicated appropriate mood and affect (Exhibit 5F, p. 12; Exhibit 32F, p. 4; Exhibit 33F, pp. 3, 53; Exhibit 36F, pp. 3, 15; Exhibit 38F, p. 3). Treatment records also indicated that the claimant is generally cooperative with intact attention and concentration, logical thought processes, and normal thought content (Exhibit 31F, pp. 2, 5, 8, 12, 14, 20, *and so on*; Exhibit 33F, pp. 30, 53; Exhibit 35F, pp. 2, 5, 14, 20).

Tr. 19. As the foregoing demonstrates, the ALJ addressed persuasiveness, supportability, and consistency in accordance with 20 C.F.R. §§ 404.1520c and 416.920c, and he pointed to evidence to support his evaluation.

Second, the ALJ summarized interrogatory responses provided by Dr. Williams, finding his opinion to be "not entirely persuasive." Tr. 20. The ALJ explained:

> As for supportability, the examiner had an overview of some of the medical evidence in the file, and he was able to evaluate the data and opinions provided by treating and consulting medical sources at that time to support his opinion, but he did not have the opportunity to review updated medical records. As for consistency, this opinion is not entirely consistent with the record, including updated medical records, which show the claimant is generally cooperative with intact attention and concentration, logical thought processes, and normal thought content (Exhibit 31F, pp. 2, 5, 8, 12, 14, 20, *and so on*; Exhibit 33F, pp. 30, 53; Exhibit 35F, pp. 2, 5, 14, 20).

Tr. 20. Again, the ALJ complied with the regulations and supported his evaluation with record evidence.

Next, the ALJ summarized Dr. Valette's hearing testimony and found her opinion to be "persuasive." Tr. 20. The ALJ explained:

> As for supportability, the medical expert studied and reviewed the entire medical record. Thus, she had a comprehensive overview of all medical evidence in the file and was able to evaluate the data and opinions provided by treating and consulting medical sources. As such, her opinions and conclusions are reasonable, supportable, and convincing. As for consistency, this opinion is generally consistent with the record, which shows the claimant is generally cooperative with appropriate attention abilities, logical thought processes, and normal thought content (Exhibit 31F, pp. 2, 5, 8, 12, 14, 20, *and so on*; Exhibit 33F, pp. 30, 53; Exhibit 35F, pp. 2, 5, 14, 20).

Tr. 20. Thus, the ALJ once again addressed persuasiveness, supportability, and consistency as required.[2]

While Plaintiff contends that the opinion evidence overwhelmingly demonstrated more than mild limitations in the area of concentrating, persisting, or maintaining pace, the fact is that only two opinions and the prior administrative findings opined on the degree of Plaintiff's mental impairments.[3] On one hand, the state agency consultants and one opinion (Dr. Williams) assessed

---

[2] Plaintiff contends – or at least implies – that it was inappropriate for the ALJ to find Dr. Valette to be more persuasive than Dr. Williams and the state agency consultants because Dr. Valette has been subject to discipline in connection with other matters. *See* [DE 22] at 12. However, the cases Plaintiff cites in support of this contention (which are not binding) do not mandate the result Plaintiff seeks, and Plaintiff has failed to show (or argue) that Dr. Valette was not qualified to testify as a medical expert in this matter. In fact, at the October 2021 hearing, Plaintiff's counsel stipulated that Dr. Valette was qualified to testify as a medical expert. Tr. 105. Moreover, it is improper for this Court to reweigh the evidence or the persuasiveness that the ALJ attributed to the opinion evidence. *See Wilhelm v. Kijakazi*, No. 8:20-CV-1560-AAS, 2022 WL 3691320, at *4 (M.D. Fla. Feb. 28, 2022); *Herod v. Kijakazi*, No. 5:20-CV-1068-LCB, 2022 WL 178586, at *4 (N.D. Ala. Jan. 19, 2022).

[3] Although the ALJ took into account a consultative examination completed by Dahlia Gordon, Psy.D., the ALJ explained that Dr. Gordon "did not render an opinion as to functional capacity." Tr. 20. Nonetheless, the ALJ considered and discussed Dr. Gordon's consultative examination, noting that it indicated Plaintiff "processed some tasks slowly and asked for task instructions to be

a moderate limitation in concentrating, persisting, or maintaining pace, and on the other hand, Dr. Valette assessed a mild limitation in this area. Regardless, it was ultimately the ALJ's responsibility to assess Plaintiff's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). As such, the ALJ was not required to assess a moderate limitation simply because two of three experts did so. *Cf. Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 3640477 (M.D. Fla. July 6, 2020) ("[T]he ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ."); *see also Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (noting, in the context of an ALJ's evauation of medical opinions, that "even if the evidence preponderates against the Commissioner's findings, we must affirm if the ALJ's decision reached is supported by sufficient evidence" (quoting *Crawford*, 363 F.3d at 1158-59) (cleaned up)). Moreover, it is not as if several experts assessed a marked or extreme limitation compared to the mild limitation assessed by Dr. Valette. Rather, the difference here was of one degree – mild versus moderate. And notwithstanding the moderate limitation assessed by the state agency consultants in the area of concentrating, persisting, or maintaining pace, the consultants found that Plaintiff "can persist and maintain attention and concentration for two hour increments *sufficiently enough to complete an eight hour workday*." Tr. 131, 147, 168, 187 (emphasis added).

---

repeated but her intellectual ability was within the average range, her insight and judgment were fair, and she admitted to being independent with her activities of daily living." Tr. 19-20. While Plaintiff relies on Dr. Gordon's examination in arguing that the ALJ erred in not including mental limitations in Plaintiff's RFC, the ALJ's decision shows that the ALJ clearly accounted for the results of the consultative examination, in conjunction with the other evidence of record, when considering whether Plaintiff has any mental limitations that impact Plaintiff's ability to work.

Furthermore, the ALJ did not rely on Dr. Valette's opinion alone, or only consider the opinion evidence and prior administrative medical findings, in assessing Plaintiff's mental limitations. As indicated above, the ALJ also considered and relied upon the other relevant evidence, including Plaintiff's activities of daily living as well as various examination findings. With respect to Plaintiff's generalized anxiety disorder and mild neurocognitive disorder, the ALJ noted that Plaintiff attended psychotherapy sessions at Jackson Memorial Hospital, where "psychological exam findings were generally normal and none showed any mental deficits." Tr. 18. The ALJ reasonably found that this "undermine[d] the severity of these [mental] impairments." Tr. 18. Additionally, in addressing the area of concentrating, persisting, or maintaining pace, the ALJ specifically noted that "treatment records showed [Plaintiff] generally demonstrated intact attention and concentration or appropriate attention abilities." Tr. 19. Significantly, in so noting, the ALJ cited to more than a scintilla of evidence (from various different dates, not just a snapshot of a single moment as Plaintiff implies).[4] *See* Tr. 19 (citing Exhibit 21F, pp. 3, 6, 9, 12, 14, 21, 23, 28; Exhibit 31F, pp. 2, 5, 8, 11, 13, 16; Exhibit 35F, pp. 2, 5, 14, 20; Exhibit 36F, p. 15).

Notwithstanding the foregoing, Plaintiff contends that the record indicates in numerous locations that Plaintiff has "significantly impaired . . . concentration deficits." [DE 22] at 11. However, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point

---

[4] Because the ALJ did not merely rely on a snapshot of a single moment, Plaintiff's reliance on *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021), is misplaced. Moreover, *Simon* applied the treating-physician rule (a rule that generally required deference to treating physician opinions), which does not apply here. *See id.* at 1104 & n.4; *see also Glover v. Comm'r, Soc. Sec. Admin.*, No. 22-10497, 2022 WL 17826364, at *3 n.2 (11th Cir. Dec. 21, 2022). Notably, the regulations that do apply here (20 C.F.R. §§ 404.1520c and 416.920c) abrogated the treating-physician rule and precedent applying that rule (such as *Simon*). *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894, 896 (11th Cir. 2022).

15

to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).  Here, Plaintiff has failed to "show the absence of substantial evidence supporting the ALJ's conclusion." *Id.*[5]

### 2. Headaches/Migraines

Plaintiff has failed to show that the ALJ erred in evaluating her headaches/migraines. According to Plaintiff, the ALJ erred by omitting "any effect of Plaintiff's well-documented chronic migraine headaches" from Plaintiff's RFC. [DE 22] at 14.  While it is true that Plaintiff's history of headaches and migraines is well-documented, the ALJ did not omit their effect from Plaintiff's RFC.  In fact, the ALJ discussed Plaintiff's headaches/migraines quite extensively.  *See* Tr. 22-26.  He simply discounted Plaintiff's statements regarding the intensity, persistence, and limiting effects of her headaches/migraines.  His decision to do so is supported by substantial evidence, including, *inter alia*, the medical opinion of ME Steven Goldstein, M.D. (who testified at both hearings before the ALJ), evidence regarding Plaintiff's activities of daily living, and evidence regarding improvement with Botox treatment.

At the first hearing, Dr. Goldstein testified that while the record frequently documents Plaintiff's headaches, Plaintiff's examinations did not indicate that Plaintiff's headaches affected her ability to function.  Tr. 53.  Rather, examinations indicated that Plaintiff was awake and alert and that she was not experiencing acute distress.  Tr. 53.  Dr. Goldstein testified that he did not see

---

[5] It is also worth noting that while Plaintiff does point to numerous pages in the record reflecting concentration deficits, *see* [DE 22] at 11, several of those instances pre-date the Alleged Onset Date (some by more than 10 years), and other instances simply document Plaintiff's complaints. *See, e.g.*, Tr. 526, 528, 533, 535 (records from 2005); Tr. 774 (noting Plaintiff's report of concentration problems).  At any rate, the important point here is that substantial evidence supports the ALJ's decision to exclude mental limitations from Plaintiff's RFC, even if other evidence may support a contrary conclusion.

emergency room visits where Plaintiff was in acute distress or where she had to stay overnight due to severe headaches. Tr. 53. At the second hearing, Dr. Goldstein testified that Botox helped with her headaches, reducing them from around 15 times per month to around twice a month. Tr. 90. He also testified that light and noise could negatively impact Plaintiff's migraines, but that she can mitigate problems by wearing sunglasses and using ear protection when noise bothers her. Tr. 93. Nevertheless, he testified that Plaintiff's RFC should exclude jobs with loud noise. Tr. 93.

Plaintiff's treating physician (Richard Singer, M.D.), on the other hand, opined that Plaintiff was far more limited. In an October 23, 2020 letter, Dr. Singer stated, *inter alia*, that Plaintiff has at least fifteen headaches per month and that she "requires a dark room and little noise to ease her headache symptoms." Tr. 1238.

The ALJ discussed both opinions (among other evidence) in his decision, and he evaluated them in accordance with 20 C.F.R. §§ 404.1520c and 416.920c (these regulations are discussed in detail in the preceding section). Regarding, Dr. Goldstein, the ALJ stated, in part, the following:

> Dr. Goldstein added the claimant also has migraine headaches, and in particular, in September 2021, the claimant had right-sided weakness and aphasia related to migraine headaches. However, Dr. Goldstein explained that Botox injections have worked well. . . . Dr. Goldstein found the claimant capable of light exertion, but he found she is precluded from climbing ropes, ladders, and scaffolds or walking on uneven surfaces. Dr. Goldstein further found the claimant capable of frequent stopping, kneeling, crouching, and crawling, frequent climbing upstairs, occasional climbing downstairs with a handrail, and occasionally balancing. Dr. Goldstein added the claimant should not be subject to loud noises or loud machinery, and she should avoid hazards like unprotected heights. This opinion is persuasive. As for supportability, the medical expert studied and reviewed the entire medical record, and thus, he had a comprehensive overview of all medical evidence in the file and was able to evaluate the data and opinions provided by treating and consulting medical sources. As such, his opinions and conclusions are supportable, reasonable, and convincing. As for consistency, this opinion is consistent with the record, which shows treatment for migraine headaches and diplopia, but exam findings generally revealed grossly intact cranial nerves, normal range of motion to the upper and lower extremities, full strength to the upper and lower extremities, grossly intact sensation to light touch throughout, normal motor tone and bulk, and or intact reflexes. The claimant also exhibited a normal gait and normal coordination.

17

Tr. 25-26 (internal citations omitted).  As to Dr. Singer, the ALJ expressly mentioned Dr. Singer's statement about Plaintiff's need for a dark room and little noise to ease headache symptoms.  Tr. 26.  Nonetheless, the ALJ found Dr. Singer's opinion to be "not entirely persuasive," stating the following:

> As for supportability, Dr. Singer is a treating provider and his opinion is based upon an established doctor-patient relationship with the claimant, but his opinion is vague and conclusory. As for consistency, this opinion is not entirely consistent with the record, which shows the claimant generally demonstrates appropriate attention and concentration.

Tr. 26.

The ALJ plainly assessed both of the foregoing opinions (and the other opinion evidence) in accordance with the 20 C.F.R. §§ 404.1520c and 416.920c, and Plaintiff does not contend otherwise.  Rather, Plaintiff contends that while there is conflict between the opinions of Dr. Goldstein and Dr. Singer, both doctors still agreed that Plaintiff had headaches/migraines.  That is true.  But it is also true that the ALJ recognized the same and took Plaintiff's headaches/migraines into account in assessing Plaintiff's RFC.  In fact, the ALJ expressly stated, "[d]ue particularly to the effects of [Plaintiff's] symptoms including *headaches*, blurry vision, and right-sided weakness, [Plaintiff] would only be capable of light exertion and as described in the" RFC.  Tr. 26 (emphasis added).  Moreover, in the same vein, the ALJ also somewhat discounted the persuasiveness of the findings of the state agency medical consultants, disagreeing with their assessment that Plaintiff was capable of medium work.  Tr. 25.  The ALJ explained that the consultants "failed to consider adequately the combined effects of [Plaintiff's] migraines and diplopia" and that "their opinions are not entirely consistent with the record, which shows treatment for migraine headaches."  Tr. 25.  The ALJ also limited Plaintiff's RFC by adding that Plaintiff should not be exposed to loud

machinery, and the ALJ explicitly stated that the objective medical evidence supported no additional limitations beyond those included in Plaintiff's RFC. Tr. 24.[6]

Ultimately, it is evident that the ALJ extensively discussed, and took into account, Plaintiff's headaches/migraines and Plaintiff's medical condition as a whole in formulating Plaintiff's RFC. In other words, the ALJ did not omit any effect of Plaintiff's headache/migraine symptoms as Plaintiff contends.[7]

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 22] is **DENIED** and Defendant's Motion [DE 26] is **GRANTED**. The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 25th day of May 2023.

*Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

---

[6] It is unclear why the ALJ limited Plaintiff to "loud machinery" rather than "loud noise" given that Dr. Goldstein specified loud "noise" as opposed to loud "machinery." Tr. 93. Nonetheless, to the extent the ALJ erred by including a loud "machinery" limitation rather than a loud "noise" limitation, any such error is harmless given the ALJ's alternative finding at step five that Plaintiff is capable of adjusting to work existing in significant numbers in the national economy even if her RFC were further limited to "no bright lights" and a "quiet noise level setting." Tr. 28.

[7] Plaintiff also implies that the ALJ should have further limited Plaintiff's RFC because of the ALJ's finding at step two that Plaintiff had the severe impairment of status post traumatic brain injury, causing diplopia and *migraine headaches*. However, Plaintiff fails to show how the ALJ's step two finding undermines the ALJ's RFC determination. *Cf. Graham v. Comm'r of Soc. Sec.*, 622 F. App'x 841, 842-43 (11th Cir. 2015) ("Substantial evidence supports the ALJ's determination Graham was not under a disability and, therefore, not entitled to DIB or SSI. Although the ALJ concluded, at step two of the evaluation, that Graham's migraine and tension headaches were severe impairments, the existence of these impairments did not undermine the ALJ's determination, at step four, that Graham retained the RFC to perform the full range of light exertional work." (citations omitted)).